Good morning, Your Honors. May it please the Court, my name is Bill Bates. I represent my law firm, Bingham McCutchen, in this appeal from a summary judgment. Because it is a summary judgment case, Your Honors, it was the plaintiff's burden to show, without a genuine dispute of fact either, that USA Commercial Mortgage received no consideration for its transfer, or it received less than reasonably equivalent value. Both of lower courts went off on the no consideration prong, and let me address that first, therefore. There is noted in USA Commercial Mortgage's records an account receivable to the project entity called Marlton Square with respect to this transfer. Everybody agrees that in a loan situation, a promise of repayment is consideration of some sort. We can talk about its value later, but it is consideration. And as far as we're concerned from a Rule 56 viewpoint, that should be the end of the matter. There is at least a factual, genuine factual issue as to whether there is consideration. Both parties agree that if, in fact, there is a promise of repayment from a solvent third party, that there wouldn't be a fraudulent transfer. That's correct, Your Honor. So even though the facts are complicated, really what we're looking at is whether there is evidence from which a trier of fact could conclude that there was a promise of repayment from a solvent third party. That's really the crux of the thing. That's correct, Your Honor. And under the case law, that's sort of been divided up into a bipartite inquiry. You first ask, was there any consideration at all? And if you decide that there was some consideration, then you look at its value. And both of the lower courts said there wasn't any at all. And the point that I have to make first is, well, they recorded a receivable for it. And their expert testified that the people who recorded that receivable had an expectation of repayment. There is no reason to think that this commercial company was making a gift to my law firm with whom it had had no prior dealings. That's enough to create an issue of fact, we believe, on that prong of the inquiry. The ---- Well, it had no prior dealings. Correct. But these ---- the relationship between it and the entity that did have dealings ---- It was a lender. It was a lender to the people who owed us money or to one of, you know, somebody who was in that affiliated set of entities. And the people who owed us money did not have it themselves. And we said, you still owe us the money. We got money from somebody who was a lender. And so that is that history. And then the question is, what did the people who pay the money get in return for that transfer? And according to their own books, they got an account receivable. Now, the lower court said an entry, and the plaintiff says a mere book entry doesn't create an obligation. And we agree, words on paper, that by one party only doesn't create an obligation. You're saying it's circumstantial evidence, though. I'm saying it is circumstantial evidence that there was an obligation. In other words, people don't write down the fact that they have a receivable unless, in most cases, they actually have a receivable. So it is circumstantial evidence reflecting an obligation, and that is our answer to that point. The final point which is made on this prong is that there is some special test that it has to be concrete and identifiable if the benefit comes not from the recipient of the transfer, in other words, from us, but from somebody else. And that, we submit, Your Honors, is just wrong as a matter of law. This Court in the Northern Merchandise case said that the source of the consideration is irrelevant, whether it be direct or indirect. The question is the effect on the estate as a whole. And the concrete and identifiable language comes out of a bankruptcy court opinion which misattributes that language to this Court. And when you read that bankruptcy court opinion, you realize that there was no test being set up there. They were simply using those words to distinguish inadmissible speculation. And so we submit that Rule 56 is the standard, and that in terms of whether or not there is a genuine issue of fact as to the receipt of some consideration, that surely has been met. And so, if I may, I'll turn to the second prong, which is the trust burden to show that there is no reasonably equivalent value that is received. And here in the briefing below and in this Court, there's been a lot of talk about burdens. And the reason for that is there was sloppy bookkeeping by USA Commercial Mortgage. And so, although they recorded this receivable, they put it on the books that they kept for the project, and there were various people who had signed the loan documentation for the project. And so the receivable does not pinpoint the obligor. And shortly after that episode, the company went into bankruptcy. About a year later, the trust came along. It wasn't until a year after that that the lawsuit was filed against us. During all of that time, the people administering the bankruptcy estate did nothing that we can tell or that they have identified to talk to the employees, to figure out, well, who, what was the promise, who did you get it from? Scalia, who is this Martin Square Associates? Who are they, a corporate entity, are they a partnership? Do we know what they are? Does the record tell us what they are? I guess it's a fair question. The record tells us what they are. I believe it's an LLC. I'm not absolutely sure of that. It is a corporate entity of some point. I'm sorry, of some type. It has sub-entities. There is MS accredition. Is there any dispute among the parties as to whether it has a legally cognizable or it has a legal identity? There is no dispute, no dispute about that, Your Honor. So the situation is on the loan documentation for this project, there is MS acquisition, which is the top-level entity, about whom we say there is a genuine issue of fact concerning its, the ability of it to pay if it were it the obligor. There also are signatures for Marlton Square Associates, which is a company which I believe is a member of MS Acquisition, and Christopher Hammonds. And so there are, there are in total four people on the loan documents. And what they, the trust has said is, what the trust normally would say, is the trust would say, the person who obligated themselves to repay this loan doesn't have any money, and so the promise was worthless and you lose. Here it can't do this because it doesn't know who made the promise to repay the money. And, and that is one of the reasons why we start talking about burdens in our law. I'm sorry, the account receivable is in the name of what entity? No entity. The account receivable is on the book of the project itself. That's correct. Now, that project has no corporate existence. That's correct. That's right. So you don't know who owes the money. Correct. We know that the borrower who took the loan to build the project was on the top-level MS Acquisition and underneath that these other levels. But the testimony from the expert for the trust is the convention of USA Commercial Mortgage was not to keep a book, books for individual entities, but on a project-by-project basis. So as far as the record shows, as I understand your position, it is that MS Associates or Mr. Hammond could be the ones responsible for this payment, and there's no evidence demonstrating they were insolvent. That's correct, Your Honor. Do you note to this record does not show to whom you, for whom you perform legal services? It does. We, we perform legal service for CVE, sometimes known as Capital Vision, which is the third-party entity that's a signatory to the loan documents. We concede that they, if it had been their promise, it wouldn't have been any good. We couldn't get any money out of them. Yeah. But a third party can give value in this, excuse me, circumstance, I mean, theoretically, whether they have is the issue. Exactly. I mean, we know, we think we know that somebody did because there's this entry on the book saying there's a receivable. Now, the trust's expert says that he has never tried to evaluate the capability of an unknown entity to repay, so there's no direct evidence that whoever that promisor was can't repay. And ultimately, the burden of proof is on the trust to show that it didn't get reasonably equivalent value, rather than on us to show that it did. And so in our view, summary judgment was inappropriate. There is a factual issue there. At trial, excuse me, the trust can show whatever it can about these entities. There's one about who they never investigated at all. I don't know what that proof is going to be. But eventually a jury will decide what it decides. But there was not, the way Rule 56 works, in our view, evidence to grant summary judgment. Now, as a legal matter, that's sort of the factual sketching. And as a legal matter, the trust says there's a burden-shifting provision. And for that, they rely on the notion, again, that because the consideration didn't come from us but came from a third party, as you say, that the burden of proof shifts to us. And we believe that's wrong. We believe that's wrong because this circuit has been consistent in saying that the burden, and Collier's on bankruptcy. I mean, everybody believes this, with the possible exception of a case that they cite called National Century. However, when you read National Century, it does not shift the burden. In that case, there was a promise from an entity who was found to be insolvent after trial, not on summary judgment, but after trial. And the Court properly held, well, that's not reasonable equivalent consideration, and the defendant came up with nothing else. So there is not actually burden-shifting there. Your Honor, I will reserve the rest of my time, if I may. Thank you. May it please the Court. Your Honors, my name is Max Beatty. I work for Don McCarthy, and we represent the USACM Liquidating Trust. Both the bankruptcy court and the trial court looked at the evidence at hand and found that there was no evidence of an enforceable promise to repay. We have de novo review, so why don't you tell us why there's no issue of fact in your view? Your Honor, there's no issue of fact because there's never been any evidence introduced of an actual promise. There is no note. There is no other enforceable obligation. One of the things that seems to be consistently mischaracterized with regard to USACM is that it was a lender. I've actually heard Mr. Bates say it several times. It shows up in the briefing from Bingham and McCutcheon. USACM wasn't a lender. USACM was a broker. It put together borrowers and lenders, but it did not make loans itself. And in fact ---- Well, let me just give you a simplistic question here, and you tell me where I'm missing the boat. As I understand the argument, the fact that there is an account receivable shown, says your opponent, is circumstantial evidence that underlying it was an enforceable promise. And they have some expert testimony to back up that idea, and that there's no showing on this record that MS Associates or Mr. Hammond was insolvent. So taking all the facts and inferences in their favor, they say, there's an issue of whether a solvent third party agreed to pay equivalent value. So what's wrong with that? Your Honor, what's wrong with that is largely their position actually ignores what is in the record right now. Now I won't debate that an entry was recorded on USACM's books under the direction of Joseph Milanowski. He did say, we will get our money back. He did not say, nor is there any evidence, that any entity actually obligated itself to make that payment. And I think this Court and most people would agree, as Mr. Bates did, an expectation of repayment does not equal an enforceable promise to repay. But that's not their position. Their position isn't that an expectation is enough. Their position is that the account receivable is circumstantial evidence of an actual underlying obligation. And they may not be able to prove it, but what they're saying is that at the summary judgment stage, that is weak but some evidence of an obligation. And so focusing on our, you know, very rigorous standard of review on the summary judgment stage, I guess that's my concern. Your Honor, what I would say is that entry is actually belied by other evidence introduced by the trust. In particular, the invoices that were sent by USACM to MS Acquisition, which are a part of the record, actually include a notation as to what principal activity occurred in the last 90 days. Neither of those invoices indicate that any amount was added to this debt that was owed by MS Acquisition. So what we see is actual affirmative evidence that this wasn't added to the actual enforceable promise to repay. Well, that seems like a conflict in the evidence rather than complete negation at the summary judgment stage. Your Honor, I would say that the evidence in its entirety is such that no reasonable jury could find otherwise. USACM was a lender and or not a lender, rather a broker, and as such was quite familiar with assisting in the documentation of these loans. Bingham McCutcheon's position is that this broker, who for many years brokered loans, put them together, drafted notes, deeds of trust, loan documents, just absolutely failed in this instance to document anything whatsoever. Do you think that's impossible? I think that in this instance that the evidence that shows that it wasn't booked as part of the loan actually is such that a reasonable jury could only find that, no, there was no consideration in this instance. That being said, Your Honor, even if that weren't the case, and if this Court found that there was some shred of evidence such that it created a fact issue that there was some consideration, consideration is not the same as reasonably equivalent value. So in this instance, and as this Court ---- Well, if it were the amount of the account receivable, would it be reasonably equivalent value? If that were the face amount of an obligation. If the face amount, so in this instance, USACM transferred $200,000, and there's an entry that is for $200,000. So that would be reasonably equivalent. Assuming that ---- Assuming there's an underlying obligation that matches the account receivable, the amount is reasonably equivalent, correct? I would agree with that as long as it was also collectible. All right. And that takes us to the other piece of the puzzle that I was mentioning, which is that there's no affirmative evidence in the record that Mr. Hammond or that the associates piece of this venture was insolvent. Your Honor, I would disagree with that. I think that's Bingham-McCutcheon's argument. But in actuality, what we are looking at is a fairly small number of entities that could be obligated here. There are two entities in question which one of the parties have a relationship with. Bingham-McCutcheon has a relationship with CVE, and they've conceded that if CVE is the obligor, then they could ----  That's why we're talking about third parties. What evidence in the record shows that Mr. Hammond is insolvent? Mr. Hammond is actually never an entity that was obligated on the underlying note. That wasn't my question. Is there evidence that he was insolvent? Yes, in the following form there is. The evidence put forth by the trust in this instance was that Mr. Hammond ran his company of networks as a web. That if any entity had the ability to make a payment, it would. That would include Mr. Hammond himself. The fact that these bills went unpaid for five years showed that no entity, including Mr. Hammond himself, was capable of repaying this. The fact of the matter is, I have heard reference, and I would like to clean this up, Bingham has argued that there are several entities, including Mr. Hammond, that obligated themselves on the note, and that's inaccurate, and that is completely dispelled by the record. If this Court looks at the promissory notes that were entered in, there is one obligor on each note. It's an entity known as MS Acquisitions Company LLC. The signature block says MS Acquisitions Company by Marlton Square, by CVE, by Hammond, each designation being managing member. The issue being that MS Acquisition couldn't sign for itself. Mr. Hammond had to physically make the signature, but the promissory notes themselves don't indicate in any way, shape, or form that Mr. Hammond, CVE, or Marlton Square were actually obligated on the notes. The only entity that had a relationship with USACM was MS Acquisition, and all of the evidence in the record shows that MS Acquisition was actually behind on its payments, and that it couldn't have made this payment for $200,000. MS Acquisition was behind by almost a million dollars in its obligations to USACM's direct lenders prior to the transfer. By January 31st, it was behind almost $1.5 million. This is a real estate investment entity. It's a real estate development entity. Its entire livelihood was based on the success of Marlton Square. Certainly, it would first and foremost make payments to ensure that the property was not foreclosed on. If that property was foreclosed on through the secured loan by the direct lenders, MS Acquisitions would have gone broke. Certainly, it would have made payments on that prior to an unsecured, undocumented advance to some lender, or to, rather, USACM. Moreover, with regard to the statement that Hammond operated these entities together as a web, one of the most telling things is the fact that the very fact that you have to believe that an entity other than CVE raised its hand and said, I would be happy to go ahead and take care of CVE's obligation to Bingham & McCutcheon. That in itself shows you the way that Hammond operated his entities, and it, in fact, shows, it is direct evidence that these entities didn't have the ability to make the payment. It was only through USACM's money, only through the transfer from USACM that Bingham & McCutcheon was able to pay its legal bills that remained outstanding for over five years. Many of these bills had nothing to do with Marlton Square. Several of them had to do with Foothill Family Apartments. Several of them had to do with a, quote, LLC reorganization. Bingham's own testimony shows these transactions, this work was performed before MS Acquisition even came into existence. Well, certainly, if any one of these entities that Bingham has pointed out would be willing to pay for CVE's legal bills that were incurred prior to its own creation, that is direct evidence of the methodology that Hammond ran his entities. He used money from any pocket to pay the obligations of the whole. Again, the fact that these bills stood outstanding for five years is excellent evidence that is absolutely undisputed that these entities could not make a payment to USACM. All Bingham & McCutcheon has done in this instance is look at the evidence that the trust has introduced that all of these entities were operated this way and say it's not enough. They've not actually introduced any evidence to contradict it. Thus, taking the evidence in the record, the natural conclusion is that any of the entities that could have obligated themselves on this, there's direct evidence that they couldn't have paid it. So even if this Court stood today and said this phantom entry on the account could constitute some value, it's still not error or is harmless error because this Court can find, based on the evidence before it, that there was no reasonably equivalent value. This debt was simply not collectible. Is there one thing that sort of confused me? Certainly. Is there any evidence that anybody ever made any contemporary statement that they were going to get the money back? Or is that kind of a surmise from the way that the? No. This was, that was contained in the complaint that Milinowski had said that we will get our money back. Again, I will point out it wasn't. At the time that he recorded, that he directed that the payment, that the entry be made? It was directed at the time of the recording of the receivable. Receivable, that's right. We'll get our money back. Not necessarily. The evidence isn't that it was a contemporaneous exchange, which is, of course, why you asked the first question, was there value made in exchange? Which brings me to sort of the last point, one that was discussed, this burden shifting. Mr. Bates has argued and Bingham has argued that this is something that's inappropriate and completely unrecognized by Rule 56. But I don't believe that's accurate whatsoever. In fact, it's a normally recognized burden shift. We are not saying that the burden of persuasion is shifted over to Bingham. Like any other summary judgment motion, if the trust comes forward and establishes a prima facie case that it's entitled to summary judgment, Bingham can't simply say, we don't believe that evidence, therefore, there's an issue. They are required to introduce evidence that contradicts the evidence entered by the trust. That hasn't happened. As I stated before, we've introduced quite a bit of evidence that none of these entities could repay, yet here we are, sitting with no evidence from Bingham McCutcheon that that's the case. And as I stated before, Bingham McCutcheon's entire argument about this phantom entity who has assured the USA commercial mortgage that it's going to repay, in order to do that, again, Hammond has to be of the mindset that any one of his entities should pay the obligations of the other. Bingham's own statements admit one of the trust's arguments. In addition to that, Bingham has made the argument that it's unsupported and doesn't even show up in Ninth Circuit law. And just as a point of reference, I would point the Court to a recent case occurring decided in 2010 in Ray Trigem American Court, which was the Central District of California, 431 Bankruptcy 855. That's the Central District of California case where specifically this sort of burden shifting was recognized. Once a prima facie case has been established that the transferee did not provide any evidence in exchange, that burden of coming forward with evidence should shift, which makes sense. The trust or any other plaintiff, for that matter, shouldn't be put at the whim of a defendant who can't exactly identify what consideration was given, but can come up with some great ideas and then attempt to absolutely force the plaintiff to eliminate all potential avenues, no matter how far-fetched or close they are. I see I'm almost out of time, so unless the Court has any other questions, I'll conclude. Thank you very much. Thank you, counsel. Mr. Bates. Very briefly. Thank you, Your Honor. Yes. Mr. Bates said that the records show that there was no additional debt created on behalf of the top-line signatory, MS Acquisition, according to the invoices to it. That's good evidence that the receivable came from somebody other than that. It came from one of these other people as to whom there is no proof of insolvency. That's why it doesn't show up on the top-line entities' bills. That is arguably that it was not the promisor. At least that is where that chain of argument would lead you. And it is, therefore, not dispositive at all, but rather helps our case, because if the chain of evidence leads you to believe that there is a promise from a promisor other than MS Acquisition, then you end up with Marlton Square Associates and Mr. Hammond. Now, they say everything was run as a web. That's a new argument on appeal, as we put out in our brief. There is no alter ego allegation down below. Neither the bankruptcy court did not consider that. There was no discovery on it. It's not in the complaint. And it's also a very far stretch from a payment once by one entity of another entity's debts to conclude that there is alter ego. It's too far a stretch. And my time is up. Thank you. Kagan. Thank you. The Court appreciates the arguments presented on both sides in this matter. The case is submitted for decision. And that concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Ripple, Graber